[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On November 16, 1994, Connecticut Light Power Company (CL P) began this action against Scott Clark (Clark) and Thomas Quinn (Quinn) seeking damages for unpaid electric services it allegedly provided. The complaint is drawn in ten (10) counts. CL P alleges that it provided electric services for property located at 249 Route 39, Newtown, Connecticut, for a restaurant known as The Corner Store (restaurant). It continues that the defendants were partners in operating the restaurant. CL P seeks damages under theories of express and implied contract, and unjust enrichment.[1]
On May 23, 1995, Clark was defaulted for failure to plead. On June 15, 1995, Clark filed an answer and two counterclaims thereby opening the default entered against him.[2] Practice Book Sec. 363A. On November 28, 1995, he filed a revised answer and counterclaims. In his first counterclaim, he alleges that he and Quinn co-owned the premises in question, but that Quinn was the sole owner and operator of the restaurant. Clark denies that he had any type of business arrangement with Quinn aside from their co-ownership, and alleges that any express or implied contract CL P had to provide electrical services to the property involved Quinn only. Moreover, Clark avers that he advised CL P of these facts, but that CL P, nevertheless, named him in this suit. Clark claims that CL P's conduct constitutes "an attempt to wrongfully collect funds from . . . [him] for services not provided to him." CT Page 4054-C
In his second counterclaim, he contends that the allegations contained in the first counterclaim constitute a violation of the Connecticut Unfair Trade Practices Act (CUTPA), set forth in Sec.42-110b et seq. of the General Statutes, in that CL P attempted to collect funds from him for services which were not rendered to him even though CL P knew, or should have known, that Clark was not the person liable for the services, all resulting in loss and damage to him.
CL P has moved to strike the two counterclaims on the grounds that they do not state legally sufficient causes of action. It characterizes the first counterclaim as one for vexatious litigation, and argues that it is improper because the underlying litigation has not yet terminated in Clark's favor, a prerequisite for a vexatious litigation claim.
As to the second counterclaim, CL P argues that it is improper because the claim contains no allegation that it was engaged in a "trade or business," an essential element for a CUTPA claim. It also asserts that it is exempt from CUTPA by the very terms of Sec. 42-110c because it is "subject to pervasive state or federal regulation," in accordance with the Supreme Court's holding in Connelly v. Housing Authority,213 Conn. 354.[3] Finally, CL P argues that Clark's CUTPA claim is legally insufficient because it is a "verbatim repetition of the claims set forth in the first counterclaim." It argues that because debt collection is only "secondary" to its business of providing electric services to the public, wrongfully attempting to collect a debt cannot be the basis of a CUTPA violation.
Clark has responded by saying that his first counterclaim does not attempt to state a claim for vexatious litigation. It is a claim that CL P wrongfully attempted to collect funds from him in violation of Sec. 36a-646 of the General Statutes. Moreover, he argues, such conduct states a common law cause of action for deceptive business practice and "may constitute outright fraud." Thus, Clark argues that the first counterclaim is legally sufficient.
As to the second counterclaim, Clark claims that it, too, is legally sufficient because paragraph 10 contains an allegation that the alleged misconduct of CL P was conducted by CL P "in the conduct of its business as an electric [and] utility company." Clark also argues that according to the plain language of Sec. CT Page 4054-D42-110c(b), CL P bears the burden of proving that it is entitled to an exemption. Finally, he argues that a single tortious act can give rise to a CUTPA violation and that his second counterclaim, therefore, is legally sufficient.
"The motion to strike . . . admits all facts well pleaded."Ferryman v. Groton, 212 Conn. 138, 142. On a motion to strike "the trial court . . . [has an] obligation to take the facts to be those alleged in the special defenses and to construe the defenses in the manner most favorable to sustaining their legal sufficiency." Connecticut National Bank v. Douglas, 221 Conn. 530,536.
"In ruling on a motion to strike, the court is limited to the facts alleged in the . . . [pleading]." Novametrix MedicalSystems, Inc. v. BOC Group, Inc., 224 Conn. 210, 215. "This includes the facts necessarily implied and fairly provable under the allegations. . . ." (Internal quotation marks omitted.)Westport Bank Trust Co. v. Corcoran, Mallin Aresco, 221 Conn. 490,495.
As to the first counterclaim, CL P's contention that Clark has attempted to state a cause of action for vexatious litigation is not persuasive. A fair reading of the allegations of the counterclaim, read in the light most favorable to sustaining its legal sufficiency, as this court is required to do; ConnecticutNational Bank v. Douglas, supra, suggests that Clark has stated a legally sufficient cause of action for wrongful collection practices by CL P in violation of Sec. 36a-646 of the General Statutes since the facts alleged by Clark, if proven, could give rise to liability by CL P.[4] The motion to strike the first counterclaim is accordingly, denied.
As to the second counterclaim, Clark has stated a legally sufficient cause of action under CUTPA. At the outset, it is noted that with few exceptions, the case law is manifest that a single act can give rise to a CUTPA violation. See, e.g.,Palmieri v. Smith, 9 CSCR 891 (July 18, 1994) (Hennessey, J.);Gustafson v. Young, 12 Conn. L. Rptr. 105, 106 (July 11, 1994) (Teller, J.); Michael J. Stula Agency, Inc. v. Wasniewski,9 CSCR 159 (January 26, 1994) (Austin, J.); Yale University School ofMedicine v. Wurtzel, Superior Court, Judicial District of New Haven at New Haven, Docket No. 275314 2 Conn. L. Rptr. 813 (November 9, 1990) (Flanagan, J.). But see Duncan v. Burnside Motors, Inc., 2 CSCR 379
(February 26, 1987) (O'Neill, J.). Moreover, Clark correctly points CT Page 4054-E out that paragraph 10 of the second counterclaim does contain an allegation that CL P's alleged misconduct was committed in this context of its trade or business as an electric company.
Assuming that CL P believes it is entitled to an exemption from CUTPA pursuant to Sec. 42-110c, it bears the burden of proving its entitlement thereto. Simply because it may be heavily regulated by state law, does not automatically entitle it to an exemption from CUTPA. For instance, although the Supreme Court has held that municipal housing authorities are exempt from CUTPA because they are "a creature of statute . . . and [are] pervasively regulated" by both the state and federal governments;Connelly v. Housing Authority, supra, 361; it has also held that — banks entities which are also subject to extensive federal and state regulation — are not entitled to an exemption from CUTPA. Normand Josef Enterprises, Inc. v.Connecticut National Bank, 230 Conn. 486, 509. As such, it cannot be said at this point that CL P is exempt from CUTPA as a matter of law. It simply has not met its burden of demonstrating an exemption from CUTPA and, in any event, such a finding would require this court to examine documents and facts outside the current record, which it is not permitted to do on a motion to strike. Connecticut State Oil Co. v. Carbone, 36 Conn. Sup. 181,182-83 ("[a] motion to strike which imparts facts from outside the pleadings is an improper `speaking motion to strike'").
Clark has set forth a prima facie CUTPA claim sufficient to withstand a motion to strike. The motion is, accordingly, denied in its entirety.